Adam Clerk, please call the next case. 213-1229, School Association for Special Ed v. Deborah Herrick. Counsel, you may proceed. Thank you. May it please the Court, Counsel. My name is Matthew Sheriff, and I represent the employer appellant, in this case, School Association for Special Education. This is an appeal of the decision of the arbitrator and the commissioner. However, it's not an appeal of the majority of that case. There is no dispute that the petitioner suffered an accident on September 21, 2006, that resulted in a back injury to the petitioner. What is on appeal is, I believe it is against the manifest weight of the evidence, that the petitioner was awarded medical expenses for two separate intervening accidents, which resulted in injuries to the left leg and right ankle, respectively. And your only issue on appeal is the medical expenses, right? You don't challenge permanent total disability, any of the other decisions, it's just paying the medical bills related to those two later injuries. Correct, Your Honor. The first incident was June 14, 2010, and as you can see, that's getting close to four years following the original accident, and is in relation to separate body parts, the left leg versus the back, which is what exclusively the treatment was up to that time. And I think also significantly, the petitioner was last seen by her treating physician, Dr. Ehrman, in December of 2009, so we're looking at over six months between that last treatment and this incident. The petitioner testified that she was removing a wasp nest from her property with the assistance of her son, when she felt her knee gave out and she slipped on wet grass, resulting in striking her leg, which caused the injury to her knee, which was a fracture and was ultimately treated. The arbitrator and the commission awarded the petitioner medical expenses for this, and I believe that was against the manifest way. The case law indicates, National Freight, that the causal connection chain is broken if there's an intervening independent accident which occurs. In this case, I believe he had competing medical testimony on this issue, right? Dr. Ehrman testified that within a reasonable degree of medical certainty, that her leg buckled because she had to change her gait as a result of the back injury and so forth, and it was all related. And he did the same thing about the second accident that you're going to talk about in a minute. And you had an expert who said, no, it's unrelated. So why couldn't the commission? Well, the argument I have against that is he, first of all, he testified that after the fact, after they both occurred, he did not give his opinion that she had some issues with her knee or walking before that. There's absolutely no diagnostic evidence, subjective evidence. Well, doctors all the time testify about things after the fact, don't they? I understand that, Judge. Didn't Ehrman opine the claimant developed an abnormal gait due to her back problems, and this may have overstressed her left knee? Didn't he say that? Well, they also did some testing on it, and he found no problem objectively with the knee. They performed an MRI. They found no issues with the knee. All right, but he did testify to reasonable degree of medical certainty. Her fall on June 14, 2010, was casually related to her injury on September 26. I mean, candidly, that was the bottom line opinion. He causally connected it, correct? He did. Okay. And then along comes Bernstein, who says it was unrelated to the back injury she sustained on 206, right? Correct. So where does it leave us? Well, I believe that Dr. Ehrman's testimony was not really based on any objective evidence. Dr. Bernstein's is based on the fact that they did objective testing. They did not find any radiculopathy. There was no evidence of it in any objective testing that was performed. There was no real complaints of objective, of radiculopathy prior to these incidents. All right, so let's assume you can legitimately point to factors that would make Bernstein's opinion superior to her. Let's assume you can do that, and it has some superficial appeal to us. Or beyond that, it has some real appeal to us. The question then becomes, whose province is it to weigh the weight of the medical evidence and the credibility? Isn't it still up to the commission to do that? Do we substitute our judgment on their decision on medical evidence? No, I don't necessarily believe you're substituting your judgment on it. I believe that the facts clearly, as it states under Swartz, the opposite conclusion is clearly apparent. I believe it is clearly apparent when you weigh the totality of all the evidence in this case. And even more so in the second incident in December of 2010, when she's walking downstairs to do laundry and can't really describe what happens, but she loses her balance somehow and hits her right foot against the wall and causes an ankle fracture. I thought her left knee went out after she'd had treatment for that knee, after it buckled because of the back. She claims the back's connected to the knee, the knee's connected to the ankle. Right. I don't know if that was her testimony provided to the medical providers. That was her testimony at the hearing. Significantly, Dr. Bernstein examined her between these two incidents in October of 2010, and that's when he performed a bunch of testing that indicated there's no evidence of radiculopathy, there's no objective evidence for why a knee should be buckling or giving out. Dr. Bernstein clearly testified that in his report. He testified that in his deposition, obviously testified to that at the hearing. Well, how do we establish a rule that says if there's some objective medical testimony to support one opinion and you're alleging it wasn't to support the other doctor's opinion, if therefore we tell the commission you must adopt the opinion that it has some objective medical evidence? Can we announce a rule that says that? I don't think I'm asking you to do that, Judge. I think I'm asking you to look at all against the manifest weight. It's clear from when you look at the totality of the evidence that it is against the manifest weight to award these two incidents. When you're talking about things that took place four years, almost four years, and then over four years from the original incident are different body parts, there's really no treatment for those body parts ever before these incidents. But how do you get around the argument that the doctor, the commission, felt Ehrman's, however subjective, Ehrman's testimony or his opinion was superior to that of Bernstein's? So how do we then say, you know, Bernstein, we're convinced by Klaman's attorney that Bernstein's testimony was superior, and so how do we do that without running afoul of the well-settled rule? We do not substitute our judgment for that of the commission, particularly on the assessment of medical evidence. Well, I think you do that by finding that when you look at the totality of the record, it was that result was against the manifest weight. Well, you can say that, but how do you get to the finding that it's against the manifest weight without finding that Bernstein was superior? You can't get around it. You can't. It's one way or the other. You can't do both. I don't know if you can. I don't know if you're saying that Bernstein's opinion was superior. I think what you're saying is Ehrman's opinion is unfounded. It's not based on objective evidence. Do we do that, though? Do we say that testimony of doctors is credible or not credible? How do we get into that? Is that our business? I think it's your business. Go ahead. I'm sorry. I'm sorry. Ehrman was her treating physician who treated her throughout this entire time period. I mean, it's kind of hard to say that he didn't have a basis upon which he could form an opinion. No, I'm not saying he can't form an opinion. A lot of the issues are not in dispute, the fact that she had a back injury, and even Bernstein recommended that she have the treatment that she had that we authorized. We authorized her to go to Florida and try the laser spine treatment. It didn't work. We authorized a bunch of treatment for Dr. Ehrman. We authorized she could have had a surgery. She didn't want a surgery. Dr. Bernstein said that that would be appropriate if that's how she wanted to proceed. Dr. Bernstein was involved in her treatment quite a ways, too, in terms of the amount of years as well. Again, I think when you look at the totality of the evidence, when you look at the two separate incidents, great distance in time from the original accident. They're both different body parts than the original accident. And based on the totality of everything that is before you, I believe it is against the manifest way to award the Petitioner the medical bills that they did for the June 2010 incident and the December 19, 2010 incident, and ask that that portion of the decision be reversed. Thank you. Thank you, counsel. You'll have time to reply. Thank you. Counsel, you may respond. Good morning, Your Honors. Frank Cross on behalf of the Court. Good afternoon. Good afternoon, Your Honors. It's been a long day, apparently. Frank Cross on behalf of the appellee, Deborah Herrick, in this matter. And counsel's recitation of the timeframe on this matter is perfect. I trust you've read the briefs. You know that there was a significant gap between the initial date of accident in 2006 and the first accident at home on June 14, 2010. What I would add to what counsel had told you about the fact is that Dr. Grimman actually was recommending an MRI and treatment for that left knee up until the last time that he did see the Petitioner, the appellee, that final time before the June 2010 accident, because there was clearly something going on in the leg that needed to be diagnosed. So this didn't come out of nowhere. And there's a factual basis, and we're talking about facts. So, again, we're talking about the manifest weight of the evidence standard. Was there a plausible medical opinion that the Commission could rely upon to find the way that it did? I believe that it did. Therefore, this decision is supported by the manifest weight of the evidence standard, and it must stand, as there's no conclusion that is clearly apparent to persuade this Court that the opposite conclusion would have been correct. We left that to the Commission. It is the well-settled rule, as you've spoken about today. And I think earlier in oral arguments, you had posed the question to a claimant, what if the opposite had been done? What would you do? And if you would ask the same of me, if the Commission had found against Ms. Herrick with regard to the order of those bills, I would have advised her that, unfortunately, the manifest weight of the evidence standard means that going to the circuit court and coming to this Court asking for another different opinion decision, rather, would be fruitless. Thank you very much. Thank you, counsel. Counsel, you may reply. Just briefly, Your Honor. Obviously, you know we have the right to appeal a portion of the decision that we did. I don't think that's an issue. The doctor did perform an MRI of the left knee and did not find anything objectively wrong with the knee. No one ever found anything objectively wrong which would cause problems with her leg, which would cause the buckling that she complained of, that would cause the alleged slip. Now, there's other ways to look at this. The ground was wet at the time she was in the WASP and she was getting help by her son down the stairs. These are two very separate intervening incidents. We're not talking about the sequelae of the original 2006, like her back deteriorated. No one's claiming that. No one's claiming that she did have a left knee injury that caused ligament damage that deteriorated that caused these issues. There's no proof of that. These are two separate intervening accidents. I believe they both break the causal connection chain from the original accident and I believe it's against the manifest way to award the petitioner medical bills that resulted from the treatment from both of those incidents. Thank you. Thank you, counsel. Thank you, counsel, both for your arguments in this matter. It will be taken under advisement. Written dispositions shall issue. Thank you.